# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY & CO. LLC, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 3:17-cv-00175-TAV-CCS ) ) |
| v. | ) *Electronically filed* ) |
| JOHN S. VERBLE, | ) **ORAL ARGUMENT REQUESTED** ) |
| Defendant. | ) ) ) ) |

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR EXPEDITED PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................. 3

III. ARGUMENT ........................................................................................................ 8

    A. This Court Has Subject Matter Jurisdiction............................................. 8

    B. This Court Should Grant A Preliminary Injunction Enjoining Verble From Re-Litigating In The FINRA Arbitration The Same Claims Already Dismissed By This Court. ................................................................ 9

        1. Plaintiffs Are Likely To Succeed On The Merits Of Their Request For Declaratory And Injunctive Relief ...................................... 9

            a. Verble's Proposed Counterclaims And Third-Party Claims In The FINRA Arbitration Are Barred By The Doctrine Of Waiver.......................................................... 9

            b. Verble's Proposed Counterclaims And Third-Party Claims In The FINRA Arbitration Are Barred By The Doctrine Of Res Judicata ................................................. 15

        2. Plaintiffs Would Suffer Irreparable Injury Without The Injunction........ 22

        3. Issuance Of The Injunction Would Not Cause Substantial Harm To Others ............................................................................................ 23

        4. The Public Interest Would Be Served By The Issuance Of The Injunction ............................................................................................ 24

IV. CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Carson v. Pepsi Bottling Grp.,
No. 06-354, 2007 WL 1464588 (E.D. Tenn. May 16, 2007)..............................................16, 20

Cemer v. Marathon Oil Co.,
583 F.2d 830 (6th Cir. 1978) ...........................................................................................22

CIG Asset Mgmt. v. Bircoll,
No. 13-13213, 2013 WL 4084763 (E.D. Mich. Aug. 13, 2013)........................................23, 24

Commodity Res., Inc. v. Certain Underwriters at Lloyds, London,
No. 12-10173, 2013 WL 3716385 (E.D. Mich. July 12, 2013)..............................................12

Erdman Co. v. Phoenix Land & Acquisition, LLC,
650 F.3d 1115 (8th Cir. 2011) ......................................................................................12, 13

Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,
289 F.3d 434 (6th Cir. 2002) .......................................................................................10, 13

Gray Holdco, Inc. v. Cassady,
654 F.3d 444 (3d Cir. 2011)..............................................................................................11

Gunn v. NPC Int'l, Inc.,
625 F. App'x 261 (6th Cir. 2015) .............................................................................9, 12, 13

Hapgood v. City of Warren,
127 F.3d 490 (6th Cir. 1997) ....................................................................................7, 16, 17

Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.,
589 F.3d 917 (8th Cir. 2009) .............................................................................................14

Hoover v. Prudential Sec., Inc.,
285 F. Supp. 2d 1073 (S.D. Ohio 2003) .............................................................................18

Hughes v. U.S. Dep't of Hous. & Urban Dev.,
238 F.3d 421, No. 00-3701, 2000 WL 1828275 (6th Cir. Dec. 8, 2000)...........................15, 19

Hurley v. Deutsche Bank Trust Co. Americas,
610 F.3d 334 (6th Cir. 2010) ......................................................................................10, 13

In re Dublin Secs., Inc.,
133 F.3d 377 (6th Cir. 1997) ......................................................................................18, 23

In re Y & A Grp. Secs. Litig.,
38 F.3d 380 (8th Cir. 1994) .......................................................................................17, 18

J.Z.G. Res., Inc. v. Shelby Ins. Co.,
    84 F.3d 211 (6th Cir. 1996) ........................................................................15, 16

Joca-Roca Real Estate, LLC v. Brennan,
    772 F.3d 945 (1st Cir. 2014) ..................................................................................12

John Hancock Mut. Life Ins. Co. v. Olick,
    151 F.3d 132 (3d Cir. 1998) ...................................................................................17

Johnson Assocs. Corp. v. HL Operating Corp.,
    680 F.3d 713 (6th Cir. 2012) ..................................................................................12

JPD, Inc. v. Chronimed Holdings, Inc.,
    539 F.3d 388 (6th Cir. 2008) ..................................................................................10

Kale v. Combined Ins. Co. of Am.,
    924 F.2d 1161 (1st Cir. 1991) ................................................................................22

Kelly v. Merrill Lynch, Pierce, Fenner & Smith,
    985 F.2d 1067 (11th Cir.) .......................................................................................18

King v. Reg'l Med. Ctr. at Memphis,
    No. 10-2094, 2010 WL 2465467 (W.D. Tenn. June 14, 2010) ...................16, 17, 20

Kramer v. Hammond,
    943 F.2d 176 (2d Cir. 1991) ...................................................................................13

LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib.,
Teamsters Local 63,
    849 F.2d 1236 (9th Cir. 1988) ................................................................................23

Maher v. GSI Lumonics, Inc.,
    433 F.3d 123 (1st Cir. 2005) ..................................................................................22

Manasher v. NECC Telecom,
    310 F. App'x 804 (6th Cir. 2009) ...........................................................................13

Martin v. Yasuda,
    829 F.3d 1118 (9th Cir. 2016) ................................................................................11

McKennon v. Patel,
    No. 10-246, 2011 WL 887727 (E.D. Tenn. Mar. 14, 2011) ...................................20

Miller Brewing Co. v. Ft. Worth Distributing Co.,
    781 F.2d 494 (5th Cir. 1986) ..................................................................................18

Miller v. Runyon,
    77 F.3d 189 (7th Cir. 1996) (Posner, J.) ................................................................17

iii

Morgan Stanley & Co. LLC v. Couch,
   659 F. App'x 402 (9th Cir. 2016) ...............................................................11, 23, 24

Randles v. Gregart,
   965 F.2d 90 (6th Cir. 1992) ...........................................................................19

Rodriguez v. Charles Schwab Corp.,
   No. 12-2277, 2013 WL 911959 (W.D. Tenn. Jan. 29, 2013) ...................................7

S & H Contractors, Inc. v. A.J. Taft Coal Co.,
   906 F.2d 1507 (11th Cir. 1990) ......................................................................11

Shaver v. F.W. Woolworth Co.,
   840 F.2d 1361 (7th Cir. 1988) .......................................................................22

Sheldon Co. Profit Sharing Plan & Trust v. Smith,
   858 F. Supp. 663 (W.D. Mich. 1994) ...............................................................17

Sherman v. Ludington,
   968 F.2d 1216, No, 91-3936, 1992 WL 158878 (6th Cir. July 7, 1992) ...............15, 19, 20

Silcox v. United Trucking Serv., Inc.,
   687 F.2d 848 (6th Cir. 1982) .........................................................................15

Southern Sys., Inc. v. Torrid Oven Ltd.,
   105 F. Supp. 2d 848 (W.D. Tenn. 2000) ...........................................................10

United States v. Chrysler Grp., LLC,
   571 F. App'x 366 (6th Cir. 2014) ....................................................................20

Verble v. Morgan Stanley Smith Barney, LLC,
   148 F. Supp. 3d 644 (E.D. Tenn. 2015), aff'd, ___ F. App'x ___, No. 15-
   6397, 2017 WL 129040 (6th Cir. Jan. 13, 2017), cert. denied, ___ S. Ct. ____,
   No. 16-946, 2017 WL 434012 (U.S. Mar. 20, 2017)................................... passim

Wilson v. Gordon,
   822 F.3d 934 (6th Cir. 2016) ...........................................................................9

WorldSource Coil Coating, Inc. v. McGraw Constr. Co., Inc.,
   946 F.2d 473 (6th Cir. 1991) ..........................................................................10

**STATUTES**

15 U.S.C. §§ 78a, et seq.................................................................................21

18 U.S.C. §§ 1341, et seq...............................................................................21

28 U.S.C. § 1332...........................................................................................8

iv

31 U.S.C. §§ 3721, *et seq*........................................................................................21

All Writs Act, 28 U.S.C. § 1651 ...............................................................................18

Dodd-Frank Act, 15 U.S.C. § 78u-6(h) ..............................................................passim

False Claims Act, 31 U.S.C. § 3730(h)................................................................passim

Sarbanes-Oxley Act, 18 U.S.C. § 1514A............................................................passim

Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ................................4, 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..............................................................................................19

FINRA Rule 13201(b) ............................................................................................7, 19

Restatement (Second) Judgments § 24 (1982)...........................................................16

www.finra.org/arbitration-and-mediation/overview (last visited April 28, 2017) .......................24

# I. **INTRODUCTION**

For more than two years, Defendant John S. Verble ("Verble") pursued in the federal court system meritless federal and state whistleblower retaliation and related state law claims against Plaintiffs Morgan Stanley Smith Barney LLC's ("MSSB") and Morgan Stanley & Co. LLC's ("MS&Co.") (collectively, "Morgan Stanley" or "Plaintiffs"). The result of that litigation was clear and unmistakable: Verble's claims were dismissed by this Court, that dismissal was affirmed by the Sixth Circuit, and his petition to the United States Supreme Court for a writ of certiorari was denied. Having sought unsuccessfully to adjudicate his claims at every level of the federal court system, Verble now seeks to essentially start over by reasserting the same claims as counterclaims and third-party claims in a pending arbitration. Plaintiffs seek declaratory and injunctive relief to enjoin Verble from re-litigating in the arbitration the same claims already litigated by the parties and adjudicated by this Court.

On December 8, 2015, following extensive briefing by the parties and amicus curiae, this Court issued a 28 page Memorandum Opinion in which it granted Plaintiffs' motion to dismiss all of Verble's claims against MSSB and MS&Co. in <u>Verble v. Morgan Stanley Smith Barney, LLC</u>, 148 F. Supp. 3d 644 (E.D. Tenn. 2015), <u>aff'd</u>, ___ F. App'x ___, No. 15-6397, 2017 WL 129040 (6th Cir. Jan. 13, 2017), <u>cert. denied</u>, ___ S. Ct. ____, No. 16-946, 2017 WL 434012 (U.S. Mar. 20, 2017) ("<u>Verble</u>" or the "Court action"). In his complaint in that action ("Complaint"), Verble pled retaliation claims under Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"), the Dodd-Frank Act, 15 U.S.C. § 78u-6(h) ("Dodd-Frank"), and the False Claims Act, 31 U.S.C. § 3730(h) ("FCA") and claims under Tennessee state law for retaliatory discharge, intentional and negligent infliction of emotional distress, and slander. Complaint (ECF 1), No. 3:15-cv-00074-TAV-CCS, (E.D. Tenn. Feb. 19, 2015). All of these

1

claims arise out of the same transaction, or series of connected transactions, because they arise from the same nucleus of operative facts; namely, Verble's employment with MSSB, the termination of his employment, and the harassment, discrimination, and retaliation Verble alleges he was subjected to because of his alleged protected activities.

Verble appealed this Court's dismissal of his claims and, after extensive briefing by the parties and amicus curiae, the Sixth Circuit affirmed the dismissal of Verble's claims on January 13, 2017.  Verble, 2017 WL 129040.  Verble then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on March 20, 2017.  Verble, 2017 WL 434012.

Eight days later, Verble filed a motion in a pending arbitration before the Financial Industry Regulatory Authority ("FINRA") ("the FINRA Arbitration") seeking leave to amend the Answer he filed there over two years ago in October 2014 to re-plead the same claims dismissed by this Court in Verble as counterclaims and third party claims against MSSB and MS&Co. in the FINRA Arbitration.  MSSB had previously initiated that FINRA Arbitration against Verble in June 2014, to recover payment of a debt owed by Verble.[1]  Rather than asserting his claims against MSSB and MS&Co. as counterclaims and third-party claims in the FINRA Arbitration at that time, Verble chose instead to file and litigate his claims in this Court, where he filed his Complaint in February 2015.  Unsatisfied with the result he received after over *two years* of litigation in federal court, Verble now seeks to essentially start over by seeking leave to re-plead the same claims dismissed by this Court as counterclaims and third party claims against the same parties in the FINRA Arbitration.

Verble's actions are improper and warrant both declaratory and injunctive relief enjoining the re-litigation of his claims in the FINRA Arbitration.  Plaintiffs seek a judicial

---

[1]     Under FINRA Rules, that claim was required to be brought in arbitration before FINRA.

declaration that Verble waived any right he may have had to arbitrate his claims by filing and actively litigating them in this Court and the appellate courts for over two years before asserting any right to arbitrate them. Verble's conduct in filing and litigating of these claims in this Court and the appellate courts was completely inconsistent with any right he may have had to arbitrate such claims, and his delay of over two years before seeking to arbitrate his claims caused actual prejudice to Plaintiffs, who were required to incur unnecessary delay and expense during two years of Court litigation, including in defending Verble's claims in this Court and before the Sixth Circuit and the Supreme Court. Plaintiffs also seek a declaration that Verble is barred by the doctrine of res judicata from re-litigating his claims in the FINRA Arbitration because they already were or could have been adjudicated to final judgment by this Court and arise from the same nucleus of operative facts as the claims adjudicated to final judgment by this Court.

In addition, Plaintiffs seek an order enjoining Verble from re-litigating his claims in the FINRA Arbitration. See generally Complaint for Declaratory Judgment and Injunctive Relief (ECF 1). Plaintiffs seek preliminary injunctive relief on an expedited basis because their response to Verble's Motion to Amend his Statement of Answer in the FINRA Arbitration, by which he seeks leave to re-plead the same claims that were already adjudicated in the Court action as new counterclaims and third party claims against the same parties in the FINRA Arbitration, is due on May 5, 2017. An expedited hearing on this Motion, therefore, is necessary to protect Plaintiffs from imminent re-litigation of these claims before FINRA.

## II.    FACTUAL BACKGROUND

Verble joined MSSB as a Financial Advisor in 2006. Verble, 148 F. Supp.3d at 647. In June 2013, MSSB terminated Verble's employment because of concerns it had regarding a financial arrangement with a third party agent of a client in which Verble accepted money from the agent after management informed him he could not do so. Id. at 648, n. 3.

On June 4, 2014, MSSB filed a Statement of Claim in the FINRA Arbitration against Verble seeking to collect payment of the outstanding balance due and owing on a promissory note. See Declaration of Sarah E. Bouchard ("Bouchard Decl.") ¶ 5 & Ex. 2, Statement of Claim. On October 17, 2014, Verble filed his Statement of Answer in the FINRA Arbitration without including any counterclaims or third party claims. Id. ¶ 6.

On February 19, 2015, Verble filed a Complaint in this Court that pled the following causes of action: (1) a retaliation claim under Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"); (2) a retaliation claim under the Dodd-Frank Act, 15 U.S.C. § 78u-6(h) ("Dodd-Frank"); (3) a retaliation claim under the False Claims Act, 31 U.S.C. § 3730(h) ("FCA"); (4) retaliatory discharge claims under Tennessee common law and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304; (5) intentional and negligent infliction of emotional distress claims under Tennessee state law; and (6) a slander claim under Tennessee common law. Bouchard Decl. ¶ 2 & Ex. 1, Complaint and Civil Cover Sheet (ECF 1 & 1-1), No. 3:15-cv-00074-TAV-CCS (E.D. Tenn. Feb. 19, 2015). He alleged all of these claims against both MSSB and MS&Co. Bouchard Decl. at Ex. 1, p.1 & ¶¶ 6-7. MSSB and MS&Co. prepared and filed a motion to dismiss all of Verble's claims in which they explained the bases upon which each claim should be dismissed. See Motion to Dismiss & Mem. Of Law in Support (ECF 10-11), No. 3:15-cv-00074-TAV-CCS (Mar. 12, 2015).

On December 8, 2015, following extensive briefing by the parties and amicus curiae,[2] this Court issued a 28 page Memorandum Opinion in which it granted the motion to dismiss and

---

[2]     Motion to Dismiss (ECF 10), No. 3:15-cv-00074-TAV-CCS (Mar. 12, 2015); Mem. Of Law in Support (ECF 11), No. 3:15-cv-00074-TAV-CCS (Mar. 12, 2015); Response in Opposition (ECF 17), No. 3:15-cv-00074-TAV-CCS (Mar. 14, 2015); Reply (ECF 19), No. 3:15-cv-00074-TAV-CCS (Mar. 23, 2015); Motion for Leave to File Amicus Brief (ECF 20), No. 3:15-cv-00074-TAV-CCS (Mar. 27, 2015); Amicus Brief (ECF 22), No. 3:15-cv-00074-TAV-

dismissed all of Verble's claims.  Verble, 148 F. Supp. 3d at 649-50, 656-59.  This Court

dismissed Verble's SOX retaliation claim both for lack of subject matter jurisdiction because

Verble failed to allege that he filed a complaint with OSHA before filing his complaint in court,

and because Verble forfeited his SOX claim by not responding to Plaintiffs' argument that it

should be dismissed.  Id. at 649-50.  This Court dismissed Verble's Dodd-Frank retaliation claim

for failure to state a claim because Verble did not allege that he provided information to the SEC

before his termination and, therefore, he did not allege sufficient facts to state a plausible claim

under Dodd-Frank's protection of whistleblowers provision since he did not adequately allege

that he qualified as a whistleblower as defined in Dodd-Frank.  Id. at 656.  This Court dismissed

Verble's FCA retaliation claim as well for failure to state a claim because Verble failed to

adequately allege facts showing that he engaged in protected activity to support his FCA claim,

and because the court was not required to grant *sua sponte* Verble leave to amend his complaint

since Verble never filed an amended complaint or requested leave to file an amended complaint.

Id. at 656-59.  The Court then declined to exercise supplemental jurisdiction over Verble's state

law claims, and thus dismissed them as well.  Id. at 659.

     Verble unsuccessfully appealed the dismissal of his claims to the Sixth Circuit, which

affirmed this Court's dismissal of all of his claims after extensive briefing and oral argument by

---

CCS (Apr. 9, 2015); Response Brief (ECF 23), No. 3:15-cv-00074-TAV-CCS (Apr. 30, 2015);
Notice of Supplemental Authority (ECF 24), No. 3:15-cv-00074-TAV-CCS (June 16, 2015);
Response (ECF 25), No. 3:15-cv-00074-TAV-CCS (June 23, 2015); Notice of Supplemental
Authority (ECF 26), No. 3:15-cv-00074-TAV-CCS (June 30, 2015); Response (ECF 27), No.
3:15-cv-00074-TAV-CCS (July 7, 2015); Notice of Supplemental Authority (ECF 28), No. 3:15-
cv-00074-TAV-CCS (Aug. 5, 2015); Response (ECF 29), No. 3:15-cv-00074-TAV-CCS (Aug.
12, 2015); Notice of Supplemental Authority (ECF 30), No. 3:15-cv-00074-TAV-CCS (Sept. 11,
2015); Response (ECF 31), No. 3:15-cv-00074-TAV-CCS (Sept. 18, 2015); Verble, 148 F. Supp.
3d at 649-50, 656-59.

the parties and amicus curiae,[3] albeit on different grounds than relied upon by this Court for the dismissal of his SOX and Dodd-Frank retaliation claims. Verble, 2017 WL 129040, at *2. The Sixth Circuit affirmed this Court's dismissal of Verble's SOX retaliation claim on the grounds that Verble stated in his Reply Brief there that he never intended to bring a SOX claim in the Court action. Id. at *2. "Accordingly, there is no [SOX] retaliation claim before us, and we now know that there never was a [SOX] retaliation claim before the district court. Because Verble never brought a [SOX] retaliation claim, we do not need to rule on whether this claim was properly dismissed." Id. The Sixth Circuit affirmed this Court's dismissal of Verble's Dodd-Frank retaliation claim for failure to state a claim, but on the grounds that Verble failed to plead sufficient facts to state a plausible claim. Id. at *4-5. Verble then petitioned the United States Supreme Court for a writ of certiorari, which was denied on March 20, 2017. Verble, 2017 WL 434012.

Eight days later, on March 28, 2017, Verble filed a motion for leave to amend his Answer in the FINRA Arbitration to re-plead many of the same claims that were dismissed by this Court in Verble as counterclaims and third-party claims against the same parties in the FINRA Arbitration. See Bouchard Decl., Ex. 3, Verble's Motion to Amend his Statement of Answer and relevant excerpts from Verble's proposed amended Statement of Answer, Counterclaim and Third-Party Claim.[4] All of Verble's proposed counterclaims and third-party claims in the

---

[3]    See Appellant Brief (ECF 21), No. 15-6397 (6th Cir. Jan. 28, 2016); Amicus Brief (ECF 24), No. 15-6397 (6th Cir. Feb. 4, 2016); Appellee Brief (ECF 29), No. 15-6397 (6th Cir. Mar. 24, 2016); Reply Brief (ECF 30), No. 15-6397 (6th Cir. Apr. 4, 2016); Cause Argued Notice (ECF 42), No. 15-6397 (6th Cir. Sept. 14, 2016).

[4]    Plaintiffs will provide the Court with a complete and unredacted copy of Verble's proposed amended Statement of Answer, Counterclaim and Third-Party Claim upon request, but will respectfully request at that time that it be provided under seal since the document includes the names of specific clients and co-workers that Verble alleges engaged in illegal activities. These individuals are not parties to this litigation, and neither their names nor their alleged

FINRA Arbitration are among the claims he previously pled in his Complaint in the Court action and which were dismissed by this Court in Verble. Bouchard Decl., Ex. 3, Verble's proposed amended Statement of Answer, Counterclaim, and Third-Party Claim at ¶¶ 140, 143-44 & pp. 1 & 26 (Dodd-Frank retaliation claim under 15 U.S.C. § 78u-6(h)); ¶¶ 138-39, 142, 144-45 & pp. 1 & 26 (FCA retaliation claim under 31 U.S.C. § 3730(h)); ¶¶ 133-34, 144 & pp. 1 & 26 (retaliatory discharge claims under Tennessee common law and TPPA, Tenn. Code Ann. § 50-1-304); ¶¶ 118-20, 144 (slander claim under Tennessee common law).[5]  Accordingly, Plaintiffs

---

activities are relevant to any issue before this Court at this time. In addition, while Verble added additional details to his allegations of alleged wrongdoing, as explained infra at 16, variations in the facts alleged will not prevent application of res judicata because the proposed new counterclaims and third-party claims are based on the same transactions or series of transactions or arose out of a common nucleus of operative fact as the claims dismissed by this Court. Hapgood v. City of Warren, 127 F.3d 490, 494 (6th Cir. 1997) ("It is irrelevant that the plaintiff, in the second action, is prepared to present evidence or theories of the case not offered in the first action, or that the plaintiff seeks remedies not previously demanded.") Variations in the facts alleged also will not prevent application of the doctrine of waiver. See infra at 9-15.

[5]     Like his Court Complaint, Verble's proposed amended Statement of Answer, Counterclaim, and Third-Party Claim references provisions of SOX. It is unclear whether Verble is proposing to assert a SOX retaliation claim in the FINRA Arbitration, given that he disclaimed any such claim before the Sixth Circuit (Verble, 2017 WL 129040, at *2) and, according to his own Court Complaint, 18 U.S.C. § 1514A(e)(2) and FINRA Rule 13201(b) preclude him from pursuing a SOX claim in the FINRA Arbitration. See Bouchard Decl., Ex. 1 at ¶ 4 (Verble pled in his own Court Complaint that "18 U.S.C. § 1514[A](e)(2) as well as FINRA Rule 13201(b) prohibit enforcement of FINRA Arbitration rules or predispute arbitration contract clauses in whistleblower actions where violations … of provisions of [SOX] are implicated.") And to the extent Verble is seeking to plead a SOX retaliation claim in the FINRA Arbitration, it is barred by the doctrines of waiver and res judicata (for the reasons explained infra at 9-22), by his own admission in his Court Complaint that such a claim could not be brought in the FINRA Arbitration and, according to Verble's own Court Complaint, by 18 U.S.C. § 1514A(e)(2) and FINRA Rule 13201(b). Id. See 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [SOX]"); FINRA Rule 13201(b) ("A dispute arising under a whistleblower statute that prohibits the use of predispute arbitration agreements is not required to be arbitrated under the [FINRA Arbitration] Code. Such a dispute may be arbitrated only if the parties have agreed to arbitrate it after the dispute arose"); Rodriguez v. Charles Schwab Corp., No. 12-2277, 2013 WL 911959, at *4-5 (W.D. Tenn. Jan. 29, 2013) (noting that Dodd-Frank "amended [SOX] to bar the arbitration of [SOX] whistleblower claims"), report and recommendation adopted, No. 12-2277, 2013 WL 907380 (W.D. Tenn. Mar. 8, 2013).

have filed this action for declaratory and injunctive relief to enjoin Verble's effort to re-litigate his claims in the FINRA Arbitration on the grounds that Verble waived any right he may have had to arbitrate such claims by his conduct in filing and actively litigating those claims in the Court action for over two years and because they are barred by res judicata. Plaintiffs' response to Verble's motion for leave to re-plead his claims as counterclaims and third party claims in the FINRA Arbitration is due on May 5, 2017. Re-litigation of these claims before FINRA, therefore, is imminent, and Plaintiffs seek preliminary injunctive relief on an expedited basis enjoining Verble from re-pleading and re-litigating in the FINRA Arbitration the very same claims that were already dismissed by this Court.

## III. **ARGUMENT**

### A. **This Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. It is undisputed that the parties are citizens of different states, as Plaintiffs are citizens of Delaware and New York, but not Tennessee, and Verble is a citizen of Tennessee. Complaint (ECF 1) at ¶¶ 4-6; Complaint (ECF 1) at ¶¶ 5-7, No. 3:15-cv-00074-TAV-CCS (E.D. Tenn. Feb. 19, 2015). It also is undisputed that the amount in controversy exceeds $75,000, exclusive of interest and costs. See Bouchard Decl., Ex. 3 at ¶¶ 138, 141-45 (Verble seeks as damages, *inter alia*, "twice his annual compensation of $359,859 plus the value of his health insurance and MSSB's contribution to his 401(k) plan from the date of his discharge until the resolution of this case" plus "approximately $263,000 that MSSB is currently holding hostage" plus compensatory and punitive damages, prejudgment interest, and attorneys' fees, costs and expenses);[6] Id., Ex. 1 Civil Cover Sheet (ECF 1-1), No. 3:15-cv-00074-TAV-CCS (E.D. Tenn. Feb. 19, 2015)

---

[6]     Verble seeks the same damages in his proposed counterclaims and third-party claims in the FINRA Arbitration. See Bouchard Decl., Ex. 3 at ¶¶ 138-45 & pp. 26-27.

(demanding $5 million dollars); see also Bouchard Decl., Ex. 2 at ¶¶ 1, 16 & pp. 4-5 (MSSB's arbitration demand seeks $229,113 owed on Verble's promissory note, plus interest, attorneys' fees, and other costs of collection). Accordingly, the requirements for diversity jurisdiction are satisfied.

## B. This Court Should Grant A Preliminary Injunction Enjoining Verble From Re-Litigating In The FINRA Arbitration The Same Claims Already Dismissed By This Court.

When considering a motion for a preliminary injunction, a district court must consider and balance four factors:

(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.

Wilson v. Gordon, 822 F.3d 934, 952 (6th Cir. 2016) (affirming grant of preliminary injunction). In this case, the balance of these factors weighs heavily in favor of granting the requested preliminary injunction.

### 1. Plaintiffs Are Likely To Succeed On The Merits Of Their Request For Declaratory And Injunctive Relief.

#### a. Verble's Proposed Counterclaims And Third-Party Claims In The FINRA Arbitration Are Barred By The Doctrine Of Waiver.

A party waives the right to arbitrate a claim when he acts in a manner inconsistent with exercising that right or delays assertion of that right to such an extent that the other party incurs actual prejudice, such as unnecessary delay or expense in court litigation, and there is resulting prejudice to the other party. See Gunn v. NPC Int'l, Inc., 625 F. App'x 261, 264-65 (6th Cir. 2015) (holding that party seeking arbitration waived right to arbitrate where it delayed seeking arbitration for 15 months while it actively litigated the claims in federal court and then only asserted its right to arbitration after it obtained unfavorable court rulings on dispositive motions,

thereby causing the opposing party to incur unnecessary delay and expense in the court litigation); Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010) (A party waives its right to arbitration if it acts in a manner "completely inconsistent with any reliance on an arbitration agreement" or delays asserting arbitration "to such an extent that the opposing party incur[red] actual prejudice.") (citation omitted); Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002) (defendant waived the right to arbitrate because "for 17 months, [it] remained idle while General Star incurred the costs associated with this action" and "sought arbitration only after the district court had entered a default judgment against it"). Some courts have gone further and held that mere "'submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party.'" Southern Sys., Inc. v. Torrid Oven Ltd., 105 F. Supp. 2d 848, 854 (W.D. Tenn. 2000) (holding plaintiff waived arbitration by, inter alia, filing counterclaim, delaying invocation of the arbitration clause for 18 months, and litigating motion to dismiss) (quoting WorldSource Coil Coating, Inc. v. McGraw Constr. Co., Inc., 946 F.2d 473, 479 (6th Cir. 1991) (applying Illinois law)). Under this authority, Verble's mere filing of his Complaint in the Court action constitutes waiver by conduct.

The law in the Sixth Circuit also is clear that the courts, rather than arbitrators, decide whether a party has waived its right to arbitrate by its inconsistent litigation conduct. JPD, Inc. v. Chronimed Holdings, Inc., 539 F.3d 388, 394 (6th Cir. 2008) (holding that "[c]ourts presumptively resolve waiver-through-inconsistent-conduct claims" because (1) "contracting parties likely would not expect arbitrators to resolve these issues because they rarely touch on a dispute's merits," an expectation confirmed by "[c]omparing the expertise of arbitrators and judges," and (2) referring waiver by litigation conduct disputes to arbitration is "'exceptionally

inefficient' because just deciding that a party waived arbitration fails to advance the substance of the case – it just gets referred back to court") (citation omitted); accord Martin v. Yasuda, 829 F.3d 1118, 1123 (9th Cir. 2016) (holding that "whether a party waived its right to arbitrate on the basis of its litigation conduct is . . . presumptively for a court and not an arbitrator to decide").[7]

Here, the waiver by litigation conduct standard easily is met with respect to all of Verble's proposed counterclaims and third-party claims in the FINRA Arbitration. At the time Verble filed his original Statement of Answer in the FINRA Arbitration in 2014, he could have included all of his newly proposed counterclaims or third-party claims in his Statement of Answer and sought to pursue them against Plaintiffs in the FINRA Arbitration. However, Verble chose not to do so. Instead, Verble made the conscious decision to plead his claims in his Court Complaint and litigate them in the Court action instead of in the FINRA Arbitration. Verble's conduct in filing his claims in this Court rather than in the FINRA Arbitration was completely inconsistent with any right he may have had to arbitrate these claims and constitutes waiver by conduct of any such right. See supra at 9-10.

Verble's further conduct in litigating his claims in this Court and the appellate courts for over two years before asserting any right to arbitrate them was also completely inconsistent with any right he may have had to arbitrate such claims, and his delay of over two years before seeking to arbitrate his claims caused actual prejudice to Plaintiffs, who were required to incur unnecessary delay and expense during two years of Court litigation, including in defending

---

[7]     Procedurally, while courts are more often confronted with waiver by litigation conduct arguments as a defense to a motion to compel arbitration, courts also may enjoin an arbitration on waiver grounds. See Morgan Stanley & Co. LLC v. Couch, 659 F. App'x 402, 406 (9th Cir. 2016) (affirming preliminary injunction enjoining arbitration of claim waived by litigation conduct); Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 450 (3d Cir. 2011) (affirming injunction barring arbitration based on waiver due to delay, participation in early motion practice, and resulting prejudice to other party); S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (same).

Verble's claims in this Court and the appellate courts. Indeed, it was only *after* this Court dismissed his claims, the Sixth Circuit affirmed that decision, and the Supreme Court rejected his petition for a writ of certiorari, that Verble *first* sought to submit his claims to arbitration by filing a motion for leave to amend his Answer in the FINRA Arbitration to re-plead those claims as counterclaims and third party claims in the FINRA Arbitration. By his conduct, Verble waived any right he may have had to arbitrate his claims. See, e.g., Gunn, 625 F. App'x at 265 (party seeking arbitration waived right to arbitrate because it actively litigated dispositive motions in the case for 15 months and only attempted to arbitrate after obtaining unfavorable rulings from the court on those motions); Commodity Res., Inc. v. Certain Underwriters at Lloyds, London, No. 12-10173, 2013 WL 3716385, at *2 (E.D. Mich. July 12, 2013) (applying Michigan law, and holding that party seeking to arbitrate had waived its right to arbitrate where it chose to file an action in federal court and only sought to arbitrate after the defendant obtained judgment in its favor); Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713, 719 (6th Cir. 2012) ("Regardless of whether each of these circumstances is insufficient to show that [the defendant] acted completely inconsistently with its right to arbitration, they may well be sufficient when considered together"); see also Erdman Co. v. Phoenix Land & Acquisition, LLC, 650 F.3d 1115, 1118 (8th Cir. 2011) (holding plaintiff waived right to arbitrate its claims by affirmatively filing them in federal court and then seeking to arbitrate only after defendant filed counterclaims; Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 948 (1st Cir. 2014) (holding that party waived right to arbitration where it "commenced a civil action, vigorously prosecuted it, and then – after many months of active litigation – tried to switch horses midstream to pursue an arbitral remedy").

Further, Plaintiffs suffered actual prejudice as a result of Verble's litigation conduct. Prejudice exists where, as here, a party is required to engage in significant litigation activities, such as dispositive motion practice and appeals, and as a result incurs otherwise unnecessary delay and expense in the litigation. Gunn, 625 F. App'x at 264-65; see also Manasher v. NECC Telecom, 310 F. App'x 804, 806 (6th Cir. 2009) (finding party "waived whatever right to arbitrate it may have had by … actively participating in litigation for almost a year without asserting that it had a right to arbitration" because that "conduct was 'completely inconsistent with [any] reliance [on the right to arbitration]' and caused the plaintiffs to suffer prejudice through unnecessary delay and expense.") (citation omitted); Erdman, 650 F.3d at 1119 (holding prejudice standard "is not onerous" and litigation expense incurred as well as duplication of effort that would result from compelling certain claims to arbitration while litigating other related claims in court constituted prejudice).

Moreover, where, as here, a party pursues arbitration only after obtaining unfavorable rulings on dispositive motions in court, this factor weighs in favor of a finding of waiver. Gunn, 625 F. App'x at 265 ("[I]t was only after NPC obtained unfavorable rulings on its initial dispositive motions that it moved to dismiss or compel arbitration. This is a factor weighing in favor of finding waiver, for it suggests that NPC's delay, instead of being attributable to an innocent or otherwise excusable purpose, was deliberately motivated by some perceived tactical advantage."); Hurley, 610 F.3d at 339 (finding waiver in part because "Defendants did not attempt to enforce their arbitration rights until *after* the district court entered an unfavorable decision"); Gen. Star, 289 F.3d at 438 (same); see also Kramer v. Hammond, 943 F.2d 176, 179-80 (2d Cir. 1991) (right to arbitration was not intended to protect "disingenuousness" in "raising a number of substantive issues" in litigation, and only invoking

arbitration after obtaining unfavorable rulings); <u>Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.</u>, 589 F.3d 917, 922 (8th Cir. 2009) (party waived arbitration right where it "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration . . . want[ing] to play heads I win, tails you lose[.]") (citation omitted).

As explained above, Verble delayed filing his claims in arbitration for over two years, and then only sought to proceed with his claims in arbitration after Plaintiffs defeated the same claims in this Court, the Sixth Circuit and the Supreme Court. In the meantime, Plaintiffs were required to incur significant litigation fees and expenses to secure dismissal of Verble's claims, which included extensive briefing on the varying reasons why each of Verble's federal and state law claims should be dismissed, and responses to an amicus brief and notices of supplemental authority filed in support of Verble's position by the SEC. <u>See</u> Bouchard Decl. ¶ 3; <u>see generally</u> No. 3:15-cv-00074-TAV-CCS, ECF 11, 19, 23, 25, 27, 29, 31. And when Plaintiffs succeeded in securing dismissal of all of his claims, Verble appealed to the Sixth Circuit, where Plaintiffs incurred further litigation fees and expenses in preparing its appellate brief to address that arguments presented on appeal by both Verble and amicus curiae and preparing for and participating in oral argument in Cleveland. <u>See</u> Bouchard Decl. ¶ 3. And when Plaintiffs succeeded in securing the Sixth Circuit's affirmance of the dismissal of Verble's claims, Verble filed a petition for a writ of certiorari to the Supreme Court, which resulted in Plaintiffs incurring additional fees and expenses before the petition was denied. <u>Id.</u>

Unsatisfied with the results of the litigation, Verble now seeks to circumvent this Court's rulings and to start anew with a clean slate in arbitration. Plaintiffs have been prejudiced because had Verble timely pursued his claims in arbitration, Plaintiffs could have avoided *all* of

these litigation expenses.[8]  Moreover, Plaintiffs will be prejudiced because they will be forced to re-litigate in arbitration entirely duplicative claims it already defeated in this Court.  Thus, it is clear that Plaintiffs suffered prejudice as a result of Verble's inconsistent litigation conduct and two year delay in seeking to pursue his claims in arbitration.

For the foregoing reasons, Plaintiffs are likely to succeed on the merits of its request for declaratory and injunctive relief enjoining Verble from re-pleading and re-litigating his proposed counterclaims and third-party claims in the FINRA Arbitration because he waived any right he may have had to arbitrate such claims under the doctrine of waiver by litigation conduct.

> b.    Verble's Proposed Counterclaims And Third-Party Claims In The FINRA Arbitration Are Barred By The Doctrine Of Res Judicata.

Plaintiffs are also likely to succeed on the merits of their request for an injunction barring arbitration of Verble's proposed counterclaims and third-party claims because the doctrine of res judicata bars these claims.

"Under the doctrine of res judicata, a final judgment on the merits bars a subsequent action between the same parties or their privies based upon the same claims or causes of action." Hughes v. U.S. Dep't of Hous. & Urban Dev., 238 F.3d 421, No. 00-3701, 2000 WL 1828275, at *2 (6th Cir. Dec. 8, 2000).[9]  "The doctrine of res judicata also prohibits relitigation of all claims or issues which were actually litigated *or which could have been litigated in a prior action*." Id. at *1 (emphasis added) (citing J.Z.G. Res., Inc. v. Shelby Ins. Co., 84 F.3d 211, 214 (6th Cir.

---

[8]    Plaintiffs incurred more than $100,000 in litigation fees and expenses in successfully defeating Verble's claims in the court litigation, including his appeals to the Sixth Circuit and the Supreme Court, before Verble filed his motion seeking leave to re-litigate the same claims as counterclaims and third party claims in the FINRA Arbitration.  See Bouchard Decl. ¶ 3.

[9]    The res judicata effect of a federal court judgment is to be determined by federal res judicata law.  Sherman v. Ludington, 968 F.2d 1216, No, 91-3936, 1992 WL 158878, at *3 (6th Cir. July 7, 1992); Silcox v. United Trucking Serv., Inc., 687 F.2d 848, 852 (6th Cir. 1982).

1996)).  As explained by the Sixth Circuit, "the doctrine of res judicata [] extinguish[es] 'all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction, or series of connected transactions, out of which the action arose.'" J.G.Z. Res., 84 F.3d at 215 (citing Restatement (Second) Judgments § 24 (1982)).

"Res judicata requires a plaintiff to bring every claim he has arising out of a common nucleus of fact at the same time, in the same lawsuit." Carson v. Pepsi Bottling Grp., No. 06-354, 2007 WL 1464588, at *2 (E.D. Tenn. May 16, 2007).  "Issues that could have and should have been raised by the plaintiff and litigated within the jurisdiction of the ... court are barred by res judicata." Id. (quotations omitted).  Moreover, "[w]hen claims arise out a single nucleus of operative of fact (or out of the same 'transaction'), they will be barred even if they involve different harms or different legal theories." King v. Reg'l Med. Ctr. at Memphis, No. 10-2094, 2010 WL 2465467, at *3-4 (W.D. Tenn. June 14, 2010).  And variations in the facts alleged will not prevent application of res judicata if the new claims are based on the same transactions or series of transactions or arose out of a common nucleus of operative fact.  Hapgood v. City of Warren, 127 F.3d 490, 494 (6th Cir. 1997) (applying Ohio law, which utilizes same "nucleus of operative facts" standard as federal law; "It is irrelevant that the plaintiff, in the second action, is prepared to present evidence or theories of the case not offered in the first action, or that the plaintiff seeks remedies not previously demanded.")

In the context of employment litigation, courts routinely hold that all claims arising out of the employment relationship are part of the same nucleus of operative facts and must be filed in the same action or they will be barred by res judicata.  Carson, 2007 WL 1464588, at *2 (where previously resolved action alleged discriminatory termination under federal law, subsequent state law claims for common law wrongful discharge, fraud, defamation, breach of good faith and fair

dealing, embarrassment, and breach of implied contract were barred by res judicata); King, 2010 WL 2465467, at *3-4 (where previously resolved action alleged causes of action under HIPAA and FCA whistleblower provision, the nucleus of operative fact was plaintiff's employment and termination of employment, and subsequent claims for intentional infliction of emotional distress, wrongful termination, and violations of whistleblower laws and HIPAA were barred by res judicata); see also Hapgood, 127 F.3d at 493-94 (ADA claim was barred by res judicata because it arose out of the same nucleus of operative facts – plaintiff's back problems and subsequent termination by the employer – as previously resolved workers' compensation retaliation claim).

Courts have the power to decide the question of whether res judicata operates to protect a prior court judgment from a successive arbitration claim, and to enjoin a successive arbitration on the basis of res judicata.  See, e.g., Sheldon Co. Profit Sharing Plan & Trust v. Smith, 858 F. Supp. 663, 667 (W.D. Mich. 1994) ("a federal court has broad injunctive powers to protect its own judgments, including the power to enjoin arbitration in the interests of preventing relitigation of claims and issues it has already decided"); John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998) (holding, as "many federal courts have held as a matter of law that claims of res judicata based on a prior federal judgment must be decided by the district court before compelling or enjoining arbitration") (collecting cases); Miller v. Runyon, 77 F.3d 189, 194 (7th Cir. 1996) (Posner, J.) ("The majority position reflects the view that the preclusive effect of a judgment is determined by the tribunal that rendered it . . . [and] it would be up to the federal courts in this case to determine the effect of the district court's judgment on a subsequent arbitration"); In re Y & A Grp. Secs. Litig., 38 F.3d 380, 382 (8th Cir. 1994) (affirming order enjoining arbitration based on res judicata and holding that "even when

arbitration is involved, federal '[c]ourts should not have to stand by while parties re-assert claims that have already been resolved.' . . . courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations") (quoting Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067, 1069 (11th Cir.), cert. denied, 510 U.S. 1011, 114 S. Ct. 600, 126 L.Ed.2d 565 (1993)); Miller Brewing Co. v. Ft. Worth Distributing Co., 781 F.2d 494 (5th Cir. 1986) (holding district court erred in refusing to enjoin arbitration based on res judicata effect of prior judgment).  Moreover, a court's authority to enjoin an arbitration based on preclusion exists under the All Writs Act, 28 U.S.C. § 1651, which empowers a court to enjoin a state court proceeding or arbitration that purports to litigate a claim previously decided by a federal court.  Hoover v. Prudential Sec., Inc., 285 F. Supp. 2d 1073, 1074-75 (S.D. Ohio 2003) (holding that court has authority to enjoin arbitration on basis of collateral estoppel under All Writs Act) (citing In re Dublin Secs., Inc., 133 F.3d 377 (6th Cir. 1997) (enjoining state court proceedings under authority vested by All Writs Act)); accord In re Y & A Grp. Sec. Litig., 38 F.3d at 383 (district court had power under All Writs Act to enjoin arbitration where prior consent judgment precluded claims).

Here, all of the elements of res judicata are met, and thus this doctrine is a complete bar to all of Verble's proposed counterclaims and third-party claims in the FINRA Arbitration. First, the parties he seeks to bring these claims against in the FINRA Arbitration are the same parties he named as defendants in his Court action, namely Morgan Stanley Smith Barney LLC and Morgan Stanley & Co., Inc. (now Morgan Stanley & Co. LLC).  See Bouchard Decl., Ex. 1 at ¶¶ 5-6 & Ex. 3, Verble's proposed amended Statement of Answer, Counterclaim, and Third-Party Claim at p. 1.  Second, the proposed counterclaims and third-party claims he seeks to

pursue in the FINRA Arbitration are the same claims he previously filed and litigated in his Court action. See supra at 6-7.

Third, this Court rendered a judgment on the merits when it dismissed Verble's Dodd-Frank and FCA claims for failure to state a claim, and that judgment was affirmed by the Sixth Circuit. See supra at 5-6. It is well-settled that "[a] Fed.R.Civ.P. 12(b)(6) dismissal for failure to state a claim operates as a decision on the merits for res judicata purposes." Hughes, 2000 WL 1828275, at *1; accord Randles v. Gregart, 965 F.2d 90, 93 (6th Cir. 1992) (same). For these reasons alone, Verble's Dodd-Frank and FCA claims are barred by res judicata.

Verble's proposed state law counterclaims and third-party claims in the FINRA Arbitration also are barred by res judicata as claims that *were or could have been* brought with the Dodd-Frank and FCA retaliation claims that were dismissed on the merits. These claims arise out of the "transaction, or series of connected transactions" out of which the Dodd-Frank and FCA retaliation claims decided in the Court action arose because they arise from the same nucleus of operative facts; namely, Verble's employment with MSSB, his alleged cooperation with the FBI, the termination of his employment, and the harassment, discrimination, and retaliation Verble alleges he was subjected to because of his alleged protected activities.[10] The law is clear that subsequent employment claims are barred by res judicata when they are filed after other employment claims are resolved. For example, in Sherman, 1992 WL 1588878, at *3, the Sixth Circuit held that subsequent claims for an alleged intentional/negligent representation that the employer would rehire plaintiff if a position became available were barred by res

---

[10] Insofar as Verble is seeking to assert a SOX retaliation claim in the FINRA Arbitration, that claim too is barred by res judicata for the same reasons. Any SOX claim is also barred by the doctrine of waiver by conduct for the reasons explained supra at 9-15, and, as explained supra at n.5, by Verble's own admission in his Court Complaint that a SOX claim could not be brought in arbitration and, by Verble's admission in his Court Complaint, by 18 U.S.C. § 1514A(e)(2) and FINRA Rule 13201(b).

judicata because they arose from the same transaction as previously resolved claims for age discrimination, wrongful discharge, negligent performance of contractual obligations, and promissory estoppel. The court reasoned that it was clear from the plaintiff's pleadings that these representations were part of the same series of occurrences that gave rise to the previously adjudicated causes of action, they occurred around the same time, and they both sought compensation for the same basic injury – the discharge and continued loss of employment. Id.; see also United States v. Chrysler Grp., LLC, 571 F. App'x 366, 372 (6th Cir. 2014) (res judicata barred FCA retaliation claim because claim "arose from the same transaction—his employment and subsequent termination" as state law wrongful termination claim that previously reached final judgment);[11] McKennon v. Patel, No. 10-246, 2011 WL 887727, at *5 (E.D. Tenn. Mar. 14, 2011) (res judicata barred retaliatory discharge claim because claim was part of same "series of connected transactions" as previous FLSA overtime lawsuit that reached final judgment); Carson, 2007 WL 1464588, at *2 (res judicata barred subsequent state law employment claims because they arose from the same transaction – the same employment relationship – as prior resolved federal law employment claims); King, 2010 WL 2465467, at *3-4 (same).

Comparing Verble's proposed counterclaims and third party claims in the FINRA Arbitration with the claims set forth in Verble's Court Complaint that were dismissed by this Court demonstrates that all of his proposed counterclaims and third-party claims arise from the same "transaction, or series of connected transactions" out of which the Dodd-Frank and FCA retaliation claims decided in the Court action arose, and that they arise from the same nucleus of operative facts; namely, Verble's employment with MSSB, his alleged cooperation with the FBI,

---

[11]     Although the Sixth Circuit applied Michigan law, Michigan employs essentially the same standard for res judicata as federal law. Chrysler Grp., 571 F. App'x at 371 (res judicata applies to "all subsequent claims arising out of the same factual transaction").

the termination of his employment which he alleges was retaliatory, and the harassment, discrimination, and retaliation Verble alleges he was subjected to because of his alleged protected activities. For example, Verble alleges in both that this is an action "for unlawful and retaliatory discharge, harassment and discrimination [against MSSB and MS&Co.], *all* arising out of [Verble]'s participation in enforcement efforts by the Federal Government under 31 U.S.C. §§ 3721 *et seq.*, 15 U.S.C. §§ 78a *et seq.*, and 18 U.S.C. §§ 1341 *et seq. and for the same* unlawful and retaliatory discharge, ongoing harassment and ongoing discrimination pursuant to Tennessee common and statutory law . . . related to a firing and discrimination … " Bouchard Decl., Ex. 1 at p. 1 & Ex. 3, Verble's proposed amended Statement of Answer, Counterclaim, and Third-Party Claim at p. 1 (emphasis added). Further, Verble pled his federal and state whistleblower claims and his state law intentional and negligent infliction of emotional distress and slander claims as a series of connected transactions arising out of a common nucleus of operative fact in both his prior federal complaint and in his proposed counterclaims and third party claims in the FINRA Arbitration. And all of his claims seek the same damages for the same alleged retaliatory actions and statements. Id., Ex. 1 at ¶¶ 57-65 & Ex. 3 at ¶¶ 138-45. Accordingly, Verble's proposed state law counterclaims and third-party claims in the FINRA Arbitration are barred by res judicata because they arise out of the same transactions or series of connected transactions and the same nucleus of operative fact as his federal court claims and thus could have been litigated to final judgment before this Court with his Dodd-Frank and FCA claims.

That this Court ultimately declined to exercise supplemental jurisdiction over Verble's state law claims is of no moment. Where, as here, a plaintiff pled only supplemental jurisdiction over his state law claims but *could have* pled and litigated them under diversity jurisdiction, res

judicata applies to those claims. Cemer v. Marathon Oil Co., 583 F.2d 830, 832 (6th Cir. 1978) (failure to bring state law breach of contract claim as diversity claim with previously adjudicated federal law discrimination claim resulted in res judicata and barred state law claim); Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1165 (1st Cir. 1991) (where court resolved federal claim on the merits and declined supplemental jurisdiction over state law claims, res judicata barred re-litigation of state law claims because they arose from the same transaction or series of transactions, and they could have been pled and litigated under diversity jurisdiction in the federal proceeding); Shaver v. F.W. Woolworth Co., 840 F.2d 1361 (7th Cir. 1988) (same); Maher v. GSI Lumonics, Inc., 433 F.3d 123, 127 (1st Cir. 2005) (same).

Here too, Verble could have pled and litigated his state law claims under diversity jurisdiction, in which case they would have been resolved by this Court. Verble is a citizen of Tennessee, while Plaintiffs are citizens of New York and Delaware. See supra at 8. Moreover, the amount in controversy far exceeded the $75,000 diversity threshold. See supra at 8-9. Diversity jurisdiction, therefore, existed for these claims, and they are barred by res judicata because Verble could have obtained a final judgment on these claims by filing them as diversity claims in his Court action. See Cemer, 583 F.3d at 832.

In sum, Plaintiffs are likely to succeed on the merits of their claims for declaratory and injunctive relief barring arbitration of Verble's claims.

### 2. Plaintiffs Would Suffer Irreparable Injury Without The Injunction.

Plaintiffs will suffer substantial and immediate irreparable injury if a preliminary injunction is not granted. As explained above, Plaintiffs have shown a strong likelihood of success on the merits of its claim that Verble waived any right to arbitration, leaving Plaintiffs with no contractual duty to arbitrate Verble's claims. Forcing Plaintiffs to spend significant time and resources arbitrating these claims in the likely absence of any contractual duty to do so

would cause Plaintiffs irreparable harm. See CIG Asset Mgmt. v. Bircoll, No. 13-13213, 2013 WL 4084763, at *2-3 (E.D. Mich. Aug. 13, 2013) (irreparable harm established because forcing party to arbitrate non-arbitrable claims would cause party to expend significant time and expenses it never would be able to recover in arbitration); Couch, 659 F. App'x at 406 (holding that forcing a party to arbitrate when the right to arbitrate has been waived would cause irreparable harm); LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) ("[party] was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate.").

Moreover, the Sixth Circuit expressly has recognized that "the potential irreparable harm to the defendants from the failure to issue an injunction is obvious" where a party is "forced to defend in yet another forum the identical claims that were asserted against the[m] unsuccessfully." In re Dublin Secs., Inc., 133 F.3d at 381. Here too, Plaintiffs will be forced to re-litigate claims it already defeated in this Court absent injunctive relief. This constitutes irreparable harm.

### 3. Issuance Of The Injunction Would Not Cause Substantial Harm To Others.

By contrast, for Verble, a preliminary injunction poses little risk of harm. If the Court ultimately decides to issue a declaratory judgment in Plaintiffs' favor and permanently enjoin arbitration of Verble's proposed counterclaims and third-party claims, the preliminary injunction will have made Verble no worse off than he is now. On the other hand, if the Court ultimately determines that Verble's proposed counterclaims and third-party claims ought to go forward before FINRA, then the preliminary injunction will have caused only minor delay in what is likely to be a long arbitration proceeding. See CIG Asset Mgmt., 2013 WL 4084763, at *3 (where only consequence to defendant will be delay in arbitration, this factor weighs in favor of

plaintiff).  In addition, because Verble seeks damages that include backpay and pre-judgment interest, any minor delay in the arbitration would not cause him any economic harm.  Bouchard Decl., Ex. 3 at ¶¶ 138-45.  This factor accordingly weighs in favor of a preliminary injunction.

### 4. The Public Interest Would Be Served By The Issuance Of The Injunction.

Public policy concerns also weigh in favor of a preliminary injunction.  Arbitration is intended to "offer a prompt and inexpensive way of resolving issues."[12]  Forcing parties to arbitrate claims they have no contractual duty to arbitrate "would only serve to complicate and extend the proceedings.  This does not serve any public interest."  Couch, 659 F. App'x at 406; accord CIG Asset Mgmt., 2013 WL 4084763, at *3.  Moreover, where, as here, the party seeking arbitration is seeking to use the arbitral forum to give his claims a second airing after court rulings did not go his way, the public interest certainly is not served.  Thus, in Gutierrez v. Wells Fargo Bank NA, the Ninth Circuit Court of Appeals "reject[ed] Wells Fargo's belated effort to invoke arbitration" after the parties had engaged in extensive litigation because even "arbitration at this juncture would frustrate the purposes of the [Federal Arbitration Act].  The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.  Far from facilitating streamlined proceedings, sending this case to arbitration post-appeal would be wholly duplicative and lead to further delay and expense for both parties."  704 F.3d 712, 721-22 (9th Cir. 2012) (internal citations omitted).

Failure to grant a preliminary injunction here would lead to similar duplication, delay, and expense.  At bottom, Verble's proposed counterclaims and third-party claims in the FINRA Arbitration are exactly what the Ninth Circuit Court of Appeals warned against when it stated that "arbitration may not be used as a strategy to manipulate the legal process."  Id. at 721

---

[12]  "Arbitration and Mediation," www.finra.org/arbitration-and-mediation/overview (last visited April 28, 2017).

(citation omitted). Verble now seeks to nullify all the effort that both the parties and this Court (and the appellate courts) have devoted to this case for the past two years in pursuit of a contradictory arbitration ruling. In the interest of public policy, Plaintiffs should not be required to submit to FINRA arbitration to begin re-litigating claims already disposed of by this Court, the Sixth Circuit, and the Supreme Court.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully submit that all of the pertinent factors weigh in favor of its request for a preliminary injunction. Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining Verble from proceeding with his proposed counterclaims and third-party claims in the FINRA Arbitration. Plaintiffs further request an expedited hearing on this Motion, given that Plaintiffs' response to Verble's Motion for Leave to Amend his Statement of Answer in which he seeks leave to re-plead the claims dismissed by this Court in the Court action as counterclaims and third-party claims in the FINRA Arbitration is due on May 5, 2017.

Dated: May 3, 2017                          Respectfully Submitted,


                                        /s/ Keith D. Frazier
                                        Keith D. Frazier, TN #12413
                                        OGLETREE DEAKINS
                                        401 Commerce Street, Suite 1200
                                        Nashville, TN 37219
                                        Telephone:  615.254.1900
                                        Facsimile:  615.254.1908
                                        keith.frazier@ogletree.com

                                        MORGAN, LEWIS & BOCKIUS LLP
                                        Andrew J. Schaffran, NY ID No. 028204*
                                        101 Park Avenue
                                        New York, NY 10178-0060
                                        Telephone:  212.309.6000
                                        Facsimile:  212.309.6001
                                        aschaffran@morganlewis.com

                                        Sarah E. Bouchard, PA ID No. 77088*
                                        W. John Lee, PA ID No. 13106*
                                        1701 Market Street
                                        Philadelphia, Pennsylvania 19103
                                        Telephone:  215.963.5000
                                        Facsimile:  215.963.5001
                                        sbouchard@morganlewis.com
                                        jlee@morganlewis.com

                                        *Admitted *pro hac vice*

                                        *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 3rd day of May, 2017, the foregoing was filed

electronically with the Clerk of the Court and served via first class mail upon the following:

John S. Verble
360 Pawnook Farm Rd.
Lenoir City, TN 37771

Courtesy copies also were served upon the following counsel via electronic mail:

Richard Neely
Michael O. Callaghan
NEELY & CALLAGHAN
159 Summers Street
Charleston, WV 25301-2134
RNeely@NeelyCallaghan.com

Jackie Sharp, Jr.
SHARP LAW, P.C.
1906 Glen Echo Road #158948
Nashville, TN 37215
jes@jackiesharp.com

*/s/ Keith D. Frazier*